# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**AARON ORLANDO RICHARDS**         **CASE NO.  6:19-CV-00314 SEC P**
**#388486**

**VERSUS**         **JUDGE SUMMERHAYS**

**DARREL VANNOY**         **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Pro se petitioner Aaron Orlando Richards, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, on March 8, 2019.  Rec. Doc. 1.  Petitioner attacks his 2011 conviction for second degree robbery and the life sentence imposed thereon by the Fifteenth Judicial District Court, Lafayette Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

## I.    Background

### a.  Factual Background

On April 16, 2009, Petitioner, Aaron Richards, along with another man, accosted a woman as she exited her car in the parking lot of Buffalo Wild Wings

Sports Bar.  The man punched the victim twice in the face, causing serious injury, took her purse containing credit cards and money while Richards acted as a lookout.

### b.  Procedural Background

Aaron Orlando Richards was charged on October 15, 2009, by a bill of information, with one count of second-degree robbery, a violation of La.R.S. 14:64.4.  A jury trial commenced on October 11, 2011, and on October 12, 2011, the jury returned a verdict of guilty as charged.   On May 30, 2012, Richards was sentenced to twenty-five years imprisonment.  Petitioner was charged as an habitual offender, on December 7, 2011 and a hearing was set.  Petitioner filed a "Motion for Reconsideration of Sentence" on June 8, 2012, which was denied without hearing on June 12, 2012.

On August 8, 2012, the habitual offender hearing was held. The trial court found the Petitioner to be a third felony offender and, pursuant to La. R.S. 15:529.1(A)(3)(b), sentenced him to imprisonment for life without the benefit of parole, probation, or suspension of sentence.  He filed a "Motion for Reconsideration of Sentence" on August 23, 2012, asserting that the sentence was excessive, which was denied without hearing.

Petitioner filed appeals of his conviction and sentence in two separate dockets, KA-12-1382 and KA-12-1354, in the Third Circuit Court of Appeals, raising the following issues: (1) the State of Louisiana failed to affirmatively prove that the

confession given on May 5, 2009, was freely and voluntarily made and not made under the influence of fear; (2) without the inadmissible confession, the State failed to provide sufficient evidence that Petitioner committed the offense of second degree robbery; and (3) excessive sentence. In two opinions, rendered June 5, 2013, the Third Circuit affirmed the conviction and sentence. *State v. Richards,* 12-1382 (La. App. 3 Cir. 6/5/2013), 114 So.3d 663 and *State v. Richards,* 12-1354 (La. App. 3 Cir. 6/5/13), 114 So.3d 639.

Petitioner filed an application for writ of certiorari in the Louisiana Supreme Court, raising all three issues which was denied on January 27, 2014. *State v. Richards*, 13-1607 (La. 1/27/14), 130 So.3d 958. Petitioner did not apply for certiorari in the United States Supreme Court. Rec. Doc. 1, p.3, ¶9(h).

Petitioner filed an application for post-conviction relief in the trial court on or about January 16, 2015, raising the following claims: (1) trial court erred in denying Petitioner's challenge for cause of prospective juror who stated that he would give more weight to the testimony of a police officer than a lay person; (2) there was jury misconduct/contamination during voir dire; (3) trial counsel was ineffective for not understanding the law of principals and, in doing so, he neglected the central issue in Petitioner's case; and (4) trial counsel was ineffective for failing to file any pre-trial motions, failing to investigate and failing to present a meaningful defense. Rec. Doc. 8-1, pp. 20-54. The trial court denied Petitioner's application in a written ruling

dated May 8, 2015. Rec. Doc. 15-4, pp. 58-61. Petitioner then filed an application for writ of review in the Third Circuit on or about June 10, 2015, pursuant to which that court remanded the matter to the trial court for a hearing on whether trial counsel was ineffective for failing to present a viable defense and whether trial counsel's questioning during voir dire contaminated the first panel. Rec. Doc. 1-3, p. 62. In all other respects, Petitioner's writ was denied.

Following a February 15, 2017 evidentiary hearing, wherein Petitioner was represented by counsel, the trial court denied Petitioner's claims. Petitioner again applied for writ of review in the Third Circuit on or about June 2, 2017. The Third Circuit, under Docket Number KH-17-00513, denied the portion of the application seeking review of claims encompassed by the remand order, as it did not comply with La. Code Crim.P. art. 912.1(C) and *City of Baton Rouge v. Plain*, 433 So.2d 710 (La. 6/10/83), *cert denied*, 464 U.S. 896, 104 S.Ct. 246 (1983). The writ application did not contain a transcript of the evidentiary hearing in the trial court or a copy of any of the exhibits introduced into evidence. Rec. Doc. 1-3, pp. 57-68. The court also denied, as being repetitive, Petitioner's claims that trial counsel was ineffective for failing to file pretrial motions and conduct discovery, as these claims were denied in a prior writ application. The Louisiana Supreme Court denied Petitioner's writ application on January 14, 2018, because "Petitioner has not demonstrated that he sought review in the court(s) below before filing in this Court

nor shown the 'extraordinary circumstances' that would justify bypassing that level of review." *State ex. rel. Orlando v. State*, 2017-2016 (La. 1/29/18), 233 So.3d 608; *see also* Rec. Doc. 8-1, pp. 136-137.  That Court later granted Petitioner's Motion for Reconsideration, and denied relief, on January 14, 2019.  Rec. Doc. 8-1, p. 137.

Petitioner filed the instant petition on March 8, 2019, raising the following claims: (1) the State did not prove beyond a reasonable doubt that Petitioner confessed to acting as a lookout in the robbery in violation of the Fifth, Sixth,  and Fourteenth Amendments to the United States Constitution; (2) the State's evidence, especially without the uncorroborated hearsay statement of a police officer that Richards confessed to acting as a lookout, is insufficient to support the jury's verdict; (3) Richards' sentence of life imprisonment is unconstitutional and in violation of the Eighth, Thirteenth, and Fourteenth Amendments; (4) trial court erred in denying Petitioner's challenge for cause of prospective juror who said that he would give more weight to the testimony of a police officer than a lay person; (5) Petitioner was deprived of his Due Process and Equal Protection rights in violation of the Sixth and Fourteenth Amendments as a result of jury misconduct and/or contamination; (6) Petitioner was denied of his right to present a defense due to his trial counsel's failure to understand the law of principals; and (7) trial counsel was ineffective for failing to file any pre-trial motions, failing to investigate and failing to present a meaningful

defense.  Rec. Doc. 1.  The State responded to the petition on November 12, 2019. Rec. Doc. 16. The matter is now ripe for review.

## II.    Law and Analysis

### a.  Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 536 U.S. 170, 180 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019).  As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id*.; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two.  *Id*.  A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (*citing Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also*, *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id. (citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id*. (*citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree

7

that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id. (citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Claims

1. **Claim 1 - The State did not prove, beyond a reasonable doubt, that Richards confessed to acting as a lookout in a robbery, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.**
2. **Claim 2 – The State's evidence, especially without the uncorroborated hearsay statement of a police officer that Richards confessed to acting as lookout, is insufficient to support the jury's verdict.**

Petitioner argues that the State did not prove, beyond a reasonable doubt, that he confessed to participating in the robbery and, without the confession, the evidence was insufficient to support the jury's verdict.  Rec. Doc. 1, pp. 5, 7.  These issues

were addressed together by the Louisiana Third Circuit Court of Appeal on direct appeal and, as such, this Court will address them in the same manner.

The record reflects that Petitioner was questioned twice by detectives in this case. The first time, following his April 28, 2009 arrest, he denied knowing anything about the robbery to Detective Todd Borel. Rec. Doc. 15-6, pp. 192, 206-08. Detective Borel had no further contact with Petitioner until May 5, 2009, when Petitioner appeared at the Lafayette Police Department and asked to speak with Det. Borel who, at that time, informed him of his Miranda rights, via an Advice of Rights form, which Petitioner signed, indicating his understanding of those rights and willingness to speak with detectives. *Id.* at pp. 201-11. Both forms were introduced at trial. It was at this time that Petitioner admitted to participating in the robbery as a lookout, and telling the detective that the victim's purse was thrown out of the window. *Id.* When questioned about the fact that the victim told police that the perpetrator wore a green polo shirt and that he was observed on a video from Walmart wearing a green polo shirt within an hour of the robbery using the victim's credit card, he responded that he switched shirts with the person who actually committed the robbery. *Id.* at pp. 211-13.

On direct appeal, Petitioner argued that "[t]he obligation to establish the free and voluntary nature of the confession or statement is mandatory and must be affirmatively established by the State. This cannot and was not waived by the

defendant and is not simply a prophylactic measure that can be skipped." However, the appellate court agreed with the State's argument that Petitioner neither filed a motion to suppress the statements prior to trial, nor did he object to the police officer's testimony regarding the statements he made during the interrogation concerning his participation in the second-degree robbery. The state courts applied the proper federal standard, *Miranda,* and Petitioner failed to provide any evidence to rebut the state's determination that this confession was freely and properly made. Accordingly, the state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and, as such, Petitioner is not entitled to relief on this claim.

Petitioner next argues that the evidence was insufficient to support his conviction, especially without his confession. However, the confession *was* admissible and *not* a violation of his constitutional rights and, therefore, the evidence at trial *was* sufficient to support the jury's verdict.

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential

elements of the crime were proven beyond a reasonable doubt. *Id*. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson,* 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594. Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

In addition to Petitioner's confession, the victim testified at trial that she was punched in the face and her purse was taken from her lap. Rec. Doc. 15-6, p. 143. She identified the perpetrator as a male with a dark complexion, broad shoulders, dark hair, wearing a green polo shirt. *Id*. at p. 144. The Petitioner was observed on video with another male attempting to purchase items at a Wal-Mart in a neighboring city with the victim's credit card, within an hour of the robbery, wearing a green polo shirt. *Id*. at p. 188. After admitting to participating in the robbery and then being confronted with the victim's statement that the perpetrator was wearing a

12

green polo shirt, he told detectives that he and the actual perpetrator switched shirts. *Id*. at p. 211.

Accordingly, this Court agrees that a rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily have found that petitioner had specific intent to commit second-degree robbery.  The jury was well within its authority to make credibility determinations as to the testimony of the witnesses.   It is not for this Court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the jury to have found that the essential elements of second- degree robbery were proven beyond a reasonable doubt.  As the Court finds that the state courts' denial of relief was not contrary to, or an unreasonable application of, United States Supreme Court precedent, Petitioner is not entitled to relief on this claim.

**3. Claim 3 – Richard's sentence of life imprisonment without benefits of probation, parole, or suspension is excessive and unconstitutional in violation of the Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution.**

Petitioner next claims that his life sentence is excessive and violates his constitutional rights.  Petitioner raised this claim on direct appeal and the Third Circuit found no merit to his claim, holding:

13

> [W]e find that "[w]here there is a constitutional mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence it is legally required to impose." *State v. Gill*, 40,915, pp. 6-7 (La.App. 2 Cir. 5/17/06), 931 So.2d 409, 413, *writ denied*, 06-1746 (La. 1/26/07), 948 So.2d 165. Defendant makes no argument showing that he is exceptional because of unusual circumstances and that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of his case.

*State v. Richards*, 114 So.3d at 642.

To the extent Petitioner challenges the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the concern of federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); See also, *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999). The sentence imposed upon Petitioner was clearly within the state statutory limits and was not excessive.

When a state sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other

14

criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F .3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) (*citing Rummel v. Estelle*, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." *Id.* (quotation marks omitted). If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *Gonzales*, 121 F.3d at 943.

Interpreting *Solem* in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we

15

> infer that the sentence is grossly disproportionate to the offense will
> we then ... compare the sentence received to (1) sentences for similar
> crimes in the same jurisdiction and (2) sentences for the same crime
> in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that *Rummel v. Estelle*, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." *Gonzales*, 121 F.3d at 943. In *Rummel*, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and considered petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional
> sentences and grossly disproportionate punishments is an inherently
> subjective judgment, defying bright lines and neutral principles of
> law. Nevertheless, we can say with certainty that the life sentence
> approved in *Rummel* falls on the constitutional side of the line,
> thereby providing a litmus test for claims of disproportionate
> punishment in violation of the Eighth Amendment.

*Gonzales*, 121 F.3d at 943 (footnote omitted).

Petitioner was convicted of the underlying offense of second degree robbery, a violation of La.R.S. 14:64.4, which provides for a range of punishment of not less than three years and not more than forty years at hard labor and is a crime of violence as designated by La.R.S. 14:2(B)(35). His prior two convictions of second-degree battery, a violation of La.R.S 14:34.1, and aggravated flight from an officer, a

16

violation of La.R.S. 14:108.1, are both designated as a crime of violence. La.R.S. 14:2(B)(39).  Under Louisiana law, when someone is found to be a third felony offender under the habitual offender statute and his three convictions were crimes of violence, he shall be sentenced to life without benefits of parole, probation, or suspension of sentence.

In light of those considerations, as well as the finding in *Rummel* that a life sentence was not excessive for the relatively minor offenses involved in that case, this Court cannot conclude that petitioner's life sentence is grossly disproportionate under federal law. Because the sentence is not grossly disproportionate, this Court's "inquiry is finished." *Gonzales*, 121 F.3d at 942.

4. **Claim 4 – It was error for the trial court to deny the Defense's challenge for cause of prospective juror Matthew Boutte, on panel one where Mr. Boutte said that he would give more weight to the testimony of a police officer than a lay person because police officers maintain a fairly respected position in society.**

Petitioner argues that the trial court erred in denying the defense's challenge for cause of prospective juror Matthew Boutte.  His argument is based on the fact that during voir dire, when asked if he give more weight to a police officer than a lay person, Mr. Boutte answered, "I would try but police officers maintain a fairly respected position in society, so I might give them more credit than I otherwise would someone else."  Rec. Doc. 15-5, p. 164.  However, as the Government points out, Petitioner only references a portion of the dialogue between his counsel, Mr.

Harold Register, and the potential juror.  In denying the challenge for cause, the trial

court found that Mr. Boutte had been rehabilitated, based on the following dialogue:

| | |
|---|---|
| Mr. Register: | And I appreciate your honesty. So, in effect, you believe that all police officers tell the truth. |
| Mr. Boutte: | No, I didn't say that. |
| Mr. Register: | If a police officer testifies, or if a non-police officer testifies, isn't it a fact that you're going to give the police officer's weight- testimony more weight? |
| Mr. Boutte: | I said it's possible. |
| Mr. Register: | So if the judge would say, 'Look, give the police officer's testimony the same weight that you would give a normal person,' you might consider that instead of doing it if the judge would order you to do that? |
| Mr. Boutte: | Certainly, you'd have to take the judge's instructions into consideration. We're all human beings, so you can't unhear something you've heard. We have to take the testimony as it is. |

*Id*. at pp. 164-65.

Denying this claim on Petitioner's application for post-conviction relief in a

written order, the trial court found that there was a reasonable factual basis for the

court's denial of the challenge for cause and Petitioner failed to demonstrate any

prejudice or that he was entitled to relief.  Rec. Doc. 15-4, p. 59.  The Third Circuit

Court of Appeal denied his application for writ of review on this claim.  Rec. Doc.

1-3, p. 62.  The Louisiana Supreme Court also denied writs.  *Id*. at p. 64.

The standard for determining when a venire member may be excluded for cause is whether the prospective "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412 (1985). A state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness on habeas review. *Miniel v. Cockrell*, 339 F.3d 331, 338-39 (5th Cir. 2003), *citing Jones v. Butler*, 864 F.2d 348, 362 (5th Cir.1988). The trial judge, who observed the exchange with Mr. Boutte firsthand, made a reasonable assessment of his qualifications to serve. Petitioner has not overcome the presumption of correctness that attaches to that decision, and the acceptance of Mr. Boutte as a juror was not an objectively unreasonable application of the principle stated in *Wainwright* and similar decisions. Habeas relief is not permitted with respect to this claim.

5. **Claim 5 – Petitioner was deprived of his Due Process and Equal Protection rights in violation of the Sixth and Fourteenth Amendments to the United States Constitution as a result of juror misconduct and/or contamination**.

Petitioner next argues that his trial was adversely affected by juror misconduct and/or contamination during voir dire. During voir dire, the trial court had two panels from the jury venire in the courtroom. Defense counsel asked potential jurors several vague questions to determine whether or not any of the jurors knew that

Petitioner was also a defendant in a first-degree murder case.  At one point he inquired:

> A while back there was a very highly televised news story about a pizza delivery man being killed. My only question to you at this point- I don't want anybody to say anything – is whether or not you heard, read or saw anything about that particular story.

Rec. Doc. 15-5, pp. 183-84.  If a prospective juror had heard of that case, individual questioning occurred to explore the possibility of prejudice to the Petitioner.

At some point, a staff member of the District Attorney's office overheard one of the potential jurors, a member of panel two, seated in the back of the courtroom, make a comment about connecting Petitioner to the murder case.  The trial judge was made aware of the statement and an evidentiary hearing was immediately held, pursuant to which defense counsel moved to excuse the entire panel.  After taking into consideration the size of the courtroom, the seating of the panels, the fact that the entire second panel could have heard the comment, the partition between the first and second panels, and the fact that the comment was heard in the very back of the courtroom, the trial judge decided that removal of the entire second panel was appropriate, to eliminate any possible contamination to any jurors from the first panel. Rec. Doc. 15-5, pp. 217-229.  The State points out that contrary to Petitioner's claim in his memorandum to this Court, the second panel was excused.

The Third Circuit, upon review of Petitioner's application for post-conviction relief, remanded this issue back to the trial court for an evidentiary hearing. Rec. Doc. 1-3, p. 62. Following testimony and argument at the February 15, 2017 hearing, the trial court found that the jury pool was not contaminated and that a fair and impartial jury listened to the evidence and found Petitioner guilty. Doc. 1-3, p. 88.

The Due Process Clause guarantees an accused the right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992); *Patton v. Yount,* 467 U.S. 1025, 1037 n.12 (1984). "[T]he Supreme Court has clearly established a constitutional rule forbidding a jury from being exposed to an external influence." *Oliver v. Quarterman*, 541 F.3d 329, 336 (5th Cir. 2008). However, the Supreme Court has made clear that the Constitution does not mandate a new trial every time a juror is placed in a potentially compromising but harmless situation. *United States v. Olano*, 507 U.S. 725, 738-39, (1993) (*citing Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

In the habeas corpus context, a petitioner is not entitled to relief based on an improper third-party contact with the jury "unless the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Oliver*, 541 F.3d at 341. Whether a jury was impartial "is a question of federal law; whether a juror can

21

in fact do that is a determination to which habeas courts owe special deference." *Patton*, 467 U.S. at 1036-37 & n.12. The effect of an extraneous communication on a juror's impartiality is a question of "historical fact," *Rushen v. Spain*, 464 U.S. 114, 120 (1983); *Patton*, 467 U.S. at 1036-37, and the state courts' determinations in that regard are entitled to a presumption of correctness, unless the petitioner "presents 'clear and convincing' evidence to the contrary." *Ward v. Stephens*, 777 F.3d 250, 268 (5th Cir. 2015) (*quoting Oliver,* 541 F.3d at 342 and 28 U.S.C. § 2254(e)(1)).

The State argues, and this Court agrees, that Petitioner has presented no evidence that any of the jurors who were empaneled heard any information that could be considered prejudicial and this claim should be denied.

### 6. Claims 6 & 7 – Ineffective Assistance of Counsel

Finally, Petitioner makes two claims of ineffective assistance of counsel, in that: (1) counsel did not understand the laws of principals; and (2) counsel did not file any pretrial motions, investigate or present a meaningful defense.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the

deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id*. at 687. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id*. Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (*quoting Strickland*, 466 U.S. at 689) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

    **a. Claim 6 – Petitioner was deprived of his right to present a defense because his trial counsel was ineffective for not understanding the law of**

**principals and in doing so, he neglected the central issue in Petitioner's case which resulted in improper notice because of lack of knowledge which ultimately resulted in no defense at all.**

Petitioner alleges that his attorney was ineffective in that he did not understand the law of principals. First, he argues that there was a "constructive amendment" to the Bill of Information after the trial began when the State discussed the law of principals during voir dire. *See* Rec. Doc. 1-3, pp. 36-37. He states, "Although the State's theory was that Richards was the actual perpetrator, the State's argument changed to include an alternative theory (offense) of principal, which is not responsive to the charged offense and more importantly, Richards was not charged with it." *Id*. The State, relying on controlling Louisiana jurisprudence, argues that a person who is charged with a crime itself is considered a principal, and no requirement to list a defendant as a principal exists. *See State v. Peterson*, 290 So.2d 307, 308 (La. 1974) ("…There is absolutely no requirement that an indictment explicitly denominate the accused as 'principal.' That the accused is indicted for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged a principal.")

Petitioner also argues that his counsel was ineffective based on his theory of the case and if he had filed a Motion for Bill of Particulars, requiring the State to be specific as to the nature and cause of the charges against him, he would have known that the State was including the concept of principals and this would have changed

24

his theory.  Rec. Doc. 1-3, pp. 37-39.  However, as the State notes, Petitioner, through his attorney, was provided with a complete copy of the State's file.  As Petitioner was considered a principal of the crime of second-degree robbery, a Bill of Particulars would not have provided his attorney with any new or different information.

The Fifth Circuit has consistently recognized that a counsel's decision to pursue one course rather than another is not to be judged by hindsight.  *Gray v. Lucas*, 677 F.2d 1086, 1094 (5th Cir. 1982) (*citing Winfrey v. Maggio*, 664 F.2d 550 (5th Cir. 1981)).  Moreover, the fact that a particular strategy may prove to be unsuccessful does not by itself establish ineffective assistance. *Id*.  As noted by the State, Petitioners' defense counsel, Mr. Register, is an attorney with a wealth of criminal trial experience. There is no evidence to indicate that he did not know or understand the legal concepts at issue.  Great deference must be given to his strategic decisions, with a strong presumption of reasonable professional conduct.

Petitioner further argues that his attorney was ineffective for failing to object to the State's "constructive amendment" of the Bill of Information made after trial began.  Rec. Doc. 1-3, p. 39-40.  The "constructive amendment" argument has been addressed by federal courts in an analysis of jury instructions on principals.  The Fifth Circuit Court of Appeals has held that in order to determine "whether a jury instruction constructively amended an indictment, we must ask 'whether the

instruction permitted the jury to convict that defendant on a factual basis that effectively modified an essential element of the offense charged.'" *United States v. Restivo*, 8 F.3d 274, 279 (5th Cir. 1993). The State argues, and this Court agrees, that this analysis can be applied to the situation at hand. Because principal is not a crime separate and distinct from second-degree robbery, there was neither an amendment to the charge nor a modification of any elements of the charge of second-degree robbery.

Denying relief on this claim, following the February 15, 2017 evidentiary hearing on Petitioner's Application for Post-Conviction Relief, the trial court found that defense counsel adequately defended Petitioner. Rec. Doc 1-3, p. 88. Defense counsel testified at that hearing and provided the trial court with no specific evidence of deficiencies in his performance, no specific arguments he would have made differently or objections he should have made. Mr. Register did request a continuance of Petitioner's trial, as, leading up to the trial, he was involved in a three-week murder trial in Shreveport. Rec. Doc. 15-5, p. 175. However, he testified that he could not state with particularity anything that he would have done differently to cause a different result, he simply didn't feel he was at his best. *Id.* at p. 176.

In this instance, the state court applied the appropriate legal standard for ineffective assistance of counsel claims. It's conclusion that Petitioner's trial counsel's representation did not fall below the objective standard of reasonableness

and that counsel was not deficient in his performance as to prejudice the petitioner has not been shown to be an unreasonable application of the law and therefore, Petitioner cannot prevail on this claim.

### b. Claim 7 – Petitioner was constructively denied counsel where his trial counsel failed to file any pre-trial motions.

Finally, Petitioner argues that his attorney was ineffective because he failed to file any pretrial motions, failed to investigate, and failed to present a meaningful defense. However, the only fact provided to bolster this argument is the fact that Mr. Register filed a motion to continue the trial, which was denied by the trial court, as the Bill of Information had been filed almost two years prior to the date of the motion and the matter had been previously continued multiple times upon motion of the defense. Rec. Doc. 15-4, p. 190.

Petitioner argues that "the mere presence of an attorney does not satisfy the constitutional guarantee of counsel," and that he was constructively denied his right to counsel because "Mr. Register failed to do anything in the pretrial stages and further failed to preserve any trial errors for appellate review." Rec. Doc. 1-3, p. 44. Specifically, Petitioner argues that counsel failed to conduct pre-trial discovery and failed to file a motion to suppress his confession. *Id.* p. 45.

As previously mentioned, Mr. Register received a copy of the state's entire file via open file discovery in advance of the trial date. Moreover, as argued by the

State, the record is replete with questions, objections, and arguments made by Mr. Register throughout the trial.

The issue of suppression of Petitioner's confession was raised on direct appeal and the Third Circuit Court of Appeal ruled it admissible, as it was made freely and voluntarily. *State v. Richards*, 114 So. 3d at 665. Defense counsel is not required to file frivolous, unnecessary motions. *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000). *See also Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir.2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite' ") (*quoting Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness). Moreover, the decision to file or not to file pretrial motions is within the realm of trial strategy. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). Trial tactics and strategy do not form the basis for federal habeas corpus relief unless it is so unreasonable that it taints the entire trial with obvious unfairness. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). This petitioner has failed to show deficient performance or prejudice and, as such, he is not entitled to relief on this claim.

### III.    Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).*

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana April 16, 2020.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**